**Carrie BROCKMAN d/b/a Carrie Brockman's Design Group, Respondent,**

v.

**Frank SOLTYSIAK, Appellant.**

**No. ED 77884.**

Missouri Court of Appeals, Eastern District, Division Two.

June 29, 2001.

Neal F. Perryman, Christopher C. Swenson, Lewis, Rice & Fingersh, L.C., St. Louis, MO, for appellants.

Carrie Brockman, (Acting Pro Se), Clayton, MO, for respondent.

JAMES R. DOWD, Judge.

Frank Soltysiak appeals the denial of his motion for judgment notwithstanding the verdict, his motion to amend judgment by remittitur, and from the trial court's grant of respondent Brockman's motion for attorneys' fees and additur of interest after a jury trial. We affirm the trial court's judgment on the plaintiff's breach of contract claim and attorneys' fees, but modify the judgment as to the amount of interest owed under the contract.

When viewed in the light most favorable to the verdict, the record shows that in March 1997, Carrie Brockman was contacted by Frank Soltysiak to renovate a restaurant within the "Shooters 21 Complex." "Shooters" is a large entertainment complex located at the Lake of the Ozarks, featuring a nightclub, restaurant, arcade, snack area, souvenir shop, dock and a boat refueling area. Soltysiak, along with Mark Michael, were the principal shareholders of Lake Shooters 21, Inc., the corporation that owned and operated Shooters. Brockman does business as "Carrie Brockman's Design Group" out of Clayton, Missouri. Soltysiak informed Brockman that he wanted her to renovate a space in the Lake of the Ozarks complex into an ups-

cale cigar bar known as "Martini's" before the upcoming Memorial Day weekend.

After several discussions concerning estimates and compensation, and the possibility that Soltysiak might be exempt from paying sales tax on some items, the two parties entered into an oral agreement on April 8, 1997. Brockman then drafted a contract, which Soltysiak signed as "Frank Soltysiak" on April 11, 1997. Because Soltysiak had introduced Michael to Brockman as his "partner," Brockman drafted the contract to say that "the partners of Martini's" agreed to hire Brockman to renovate their restaurant. The contract provided that Brockman would be paid ten percent over cost, plus a $7,500 design fee. The contract states that "No orders will be placed without a signed contract and available funds to cover the cost of the order." It also provided for both attorneys' fees and interest on past due accounts.

Because the project had to be finished before May 31, 1997, Brockman designated it a "rush job." In order to have the furniture and accessories made and installed on time, she had to place orders quickly. Soltysiak and Michael were experiencing some cash flow problems owing to a slow winter season, and in order to facilitate payment for orders they gave Brockman their personal credit card numbers so that she could charge items directly to their credit accounts. After the April 11, 1997 meeting, orders were often placed on the oral permission of Soltysiak or Michael without obtaining a signature. Brockman completed the project, as contracted, before the Memorial Day weekend. Michael and Soltysiak expressed at that time that they were happy with the work Brockman had done and they made no complaints about the invoices she gave them.

Payments to Brockman were generally made without reference to a particular invoice. Sometimes payments would be used to satisfy signed invoices; sometimes they were used to satisfy unsigned invoices. Soltysiak and Michael never objected to the manner in which Brockman allocated their payments. All invoices for the project had been sent to "Martini's, Frank Soltysiak at Shooters." No invoices were ever sent to Lake Shooters 21, Inc. Brockman received her last payment from Soltysiak on June 21, 1997 in the form of a Lake Shooters 21, Inc. check for $15,000. Soltysiak did not indicate that the payment should be used only to reduce amounts on signed invoices.

On January 7, 1998, Brockman filed suit against Soltysiak, alleging two causes of action, one on the account established by the contract and one for unjust enrichment. On April 13, 1998, Lake Shooters 21, Inc. filed for bankruptcy. At that time Brockman had been paid approximately $42,000 for her work, but the unpaid invoices totaled $31,510. Brockman's name was never listed on Lake Shooters' schedule of creditors and she received no money from the bankrupt estate before the corporation was administratively dissolved on August 14, 1998. Brockman later amended her petition to include additional counts against Soltysiak and four counts against Michael. Of the nine counts contained in the Second Amended Petition, only two counts were submitted to the jury: one against Soltysiak for breach of contract and one against Michael for unjust enrichment. On March 20, the jury returned a verdict in favor of Brockman and against Soltysiak, awarding damages in the amount of $31,510.46 and $9,000 in interest. On the count against Michael, the jury found in favor of Michael. On March 22, 2000, the Circuit Court entered its judgment in accordance with the jury's verdicts.

On March 23, 2000, Brockman filed a post-trial motion for award of attorney's

fees totaling $34,869 and motion for additur of interest from $9,000 to $18,287.15. On April 11, 2000 Soltysiak filed a motion for judgment notwithstanding the verdict, new trial, or in the alternative, to amend judgment or remit the amount of the verdict. In his motion, Soltysiak argued that the jury's verdict should be set aside because uncontroverted evidence established that Brockman knew she was dealing with a corporation, Lake Shooter's 21, Inc., and not an individual. Soltysiak, also argued that the judgment should be amended or remitted. On April 17 the parties' post-trial motions were argued and taken under submission. On April 20, 2000 the court denied Soltysiak's motions and granted Brockman's motions for attorneys' fees and additur of interest, awarding her $15,784.23 in attorneys' fees and increasing the amount of the judgment for contractual interest from $9,000 to $18,287.85. The court did not make a finding that a new trial was warranted, and Soltysiak did not consent to the additur of interest. Soltysiak now appeals.

▮ In his first point, Soltysiak argues that the circuit court erred in denying his motion for judgment notwithstanding the verdict. He alleges that Brockman failed to establish that Soltysiak, individually, entered into any contract with her. Rather, he claims that all available evidence and inferences establish that Brockman entered into a contract with Lake Shooter's 21, Inc. In particular, Soltysiak points to the fact that Brockman knew that Martini's was within the Shooters complex, and that he provided Brockman with a copy of Lake Shooters 21, Inc.'s retail tax license which might exempt the corporation from paying sales tax.

▮ In reviewing a motion for judgment notwithstanding the verdict, the court views the evidence in the light most favorable to the verdict and disregards all contrary evidence. *Bigler v. Conn*, 959 S.W.2d 134 (Mo.App. S.D.1998). "We will not overturn a jury verdict unless there is a complete absence of probative facts to support it." *Kimbrough v. J.R.J. Real Estate Investments, Inc.*, 932 S.W.2d 888, 889 (Mo.App. E.D.1996). In this case, there was ample evidence to support the jury's conclusion that Soltysiak, individually, contracted with Brockman. First, Soltysiak signed the contract as "Frank Soltysiak" without indicating that he was signing in a representative capacity for Lake Shooter's 21, Inc. Second, the majority of Brockman's payments were drawn from the personal checks and credit cards of Soltysiak and his associate, Mark Michael. Third, all of the invoices for the project were sent to "Martini's, Frank Soltysiak at Shooters." No invoices were ever sent to Lake Shooters 21, Inc. Finally, though Soltysiak presented evidence that he and his bankruptcy attorney simply forgot to list Brockman as a creditor when Lake Shooter's 21, Inc. filed for bankruptcy, the jury was free to take the failure to list Brockman, along with Brockman's testimony and other evidence, as proof that Brockman contracted with Soltysiak as an individual and not as a representative of Lake Shooter's 21, Inc. Point denied.

▮ In Soltysiak's second point, he argues that the court erred in denying his motion to amend judgment and for remittitur. The standard of review for such an order is for an abuse of discretion. *Meyer v. McGarvie*, 856 S.W.2d 904, 908 (Mo.App. E.D.1993). Remittitur is appropriate "if the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's ... damages." *Id.* Soltysiak contends that the verdict exceeded Brockman's fair and reasonable compensation because it awarded her monies that she was not entitled to

under the contract. He notes that the contract required all orders to be signed and that only three signed orders were unpaid. These three unpaid orders totaled $10,345.46, not the $31,510.46 the jury awarded Brockman. Soltysiak asserts that Brockman should not be allowed to recover more than the contract allows and that the terms of the contract limit Brockman's recovery to the total of the three signed, unpaid orders.

 In order to recover on a claim of breach of contract a party must show their own substantial compliance with the terms of the contract. *Gilmartin Bros., Inc. v. Kern,* 916 S.W.2d 324, 329 (Mo.App. E.D. 1995). "A party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance." *Id.* Whether or not a contract has been substantially performed depends on the facts and circumstances of the particular case. *In re Estate of English,* 691 S.W.2d 485, 489 (Mo.App.1985). Parties may by agreement establish a method of modifying the terms of the contract if the parties accept it as compliance with the contract. *H.B. Deal Const. Co. v. Labor Discount Center, Inc.,* 418 S.W.2d 940, 950 (Mo.1967). When such an agreement is made, the parties become bound thereby and it is enforceable by the court. *Id.*

 Although the contract in this case required all orders to be signed, through their actions and dealings, the parties waived literal compliance with those contract provisions. Habitual acceptance of work done on oral change orders in connection with a contract, and payment therefore, results in waiver of a contract clause providing that all orders must be signed. *Winn Senter Constr. Co. v. Katie Franks, Inc.,* 816 S.W.2d 943, 946 (Mo. App. W.D.1991). Waiver of a writing re-

quirement may be established by presenting evidence the parties agreed to the orders and the orders were completed. *Id.* at 945–46. Here, the evidence, viewed in the light most favorable to the verdict, shows that Brockman obtained approval for orders from Soltysiak over the phone, that payments were credited to orders without regard to their being signed, and that Soltysiak accepted the work done for him by Brockman. The evidence shows that Soltysiak did not dispute the manner in which payments were allocated or object that he was being charged for unsigned orders until after Brockman had completely performed her part of the contract and filed suit against Soltysiak for the unpaid balance. Point denied.

 In his third point, Soltysiak claims that the trial court erred in awarding attorneys' fees because Brockman failed to allocate attorneys' fees between her claims against Soltysiak and Michael. The amount of attorneys' fees awarded is within the sound discretion of the trial court. *Distler v. Reuther Jeep Eagle,* 14 S.W.3d 179, 186 (Mo.App. E.D.2000). Because trial courts are considered experts on attorneys' fees, they require no evidence as to the value of the services. *Id.* If a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court can award them to the prevailing party. *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness Inc.,* 884 S.W.2d 733, 739 (Mo.App. E.D. 1994).

 Brockman presented evidence showing $34,869.00 in legal services and expenses. The contract here provided that "buyer agrees to pay supplier's reasonable attorney's fees in any amount not to exceed 50% in excess of any unpaid balances." The jury found, by substantial evidence, that Soltysiak owed Brockman $31,510.46 on the contract, before adding

**746**

contractual interest. The trial court awarded Brockman $15,755.23 in attorneys' fees, exactly fifty percent of the amount the jury found Soltysiak owed Brockman under the contract. Soltysiak argues that this was improper because Brockman failed to indicate which services and expenses were used for her counts against Soltysiak and which were used in her counts against Michael. Soltysiak cites *Funding Systems Leasing Corp. v. King Louie Intl., Inc.,* 597 S.W.2d 624, 637 (Mo.App.1979) for the proposition that "the requesting party must allocate which attorneys' fees belonged to which claim in order to be awarded any attorneys' fees." (emphasis in the original). In *Funding Systems* this court affirmed the trial court's denial of attorneys' fees when the appellant was involved in complex litigation with two distinct business entities and offered "no proof of any allocation as between those two branches of legal services." *Id. Funding Systems* does not stand for the proposition that a party must allocate her attorneys' fees where, as here, the damages against each defendant in a two count submission are identical and indivisible. Point denied.

■ In his fourth point of error, Soltysiak argues that the court erred in granting Brockman's motion for additur of interest because the jury rejected the compound interest sought by Brockman and the contract did not provide for compound interest. At the outset, we note that the trial court has the power to compute and add interest owing on a contract, and that when the jury makes a mere computational error in calculating interest from dates over which there is no dispute, the trial court has the authority to correct that mistake. *Home Trust Co. v. Josephson,* 339 Mo. 170, 95 S.W.2d 1148, 1154–55 (1936); *Campbell v. Kelley,* 719 S.W.2d 769, 772 (Mo. banc 1986); *Hamra v. Boone County Development Co.,* 602 S.W.2d 721, 727 (Mo.App. E.D.1980).

■ Parties may contract, in writing, for the payment of compound interest. § 408.080 RSMo 1994. But interest will not be compounded unless the contract states clearly on its face that the interest is to bear interest. *Sloan v. Paris,* 541 S.W.2d 316, 321 (Mo.App.1976). Here the contract provides that: "A monthly charge of 1.5% (18% APR) will be charged on past due accounts." This does not indicate clearly that interest will be compounded monthly. Accordingly, interest on the balance due should be calculated at a simple 18% annual rate. The jury found that Soltysiak owed Brockman $31,510.46 on the contract. It is undisputed that prejudgment interest accumulated from June 21, 1997 (the date of Soltysiak's last payment) through March 20, 2000 (the day the jury returned its verdict). Taking the principal amount due of $31,510.46, multiplying it by .18 (representing the annual percentage rate of 18%), dividing that amount by the number of days in the year and rounding to the nearest penny, we get the daily interest charge of $15.54. There were 1004 days in the period from June, 21, 1997 to March 20, 2000. Multiplying the daily interest charge of $15.54 by 1004 and rounding to the nearest penny produces a sum of $15,602.16. The trial court's judgment awarding interest in the amount of $18,287.85 is hereby reversed and we enter judgment for interest on the contract in the amount of $15,602.16 pursuant to Rule 84.14. In all other respects the judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J., Concurs.

WILLIAM H. CRANDALL, Jr., J., Concurs.