Tonya WISKUR, Plaintiff–Appellant,

v.

Karl JOHNSON, Defendant–
Respondent.

No. 26320.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 23, 2005.

John C. Banning, Springfield, for Appellant.

Daniel D. Whitworth, Bradley R. Barton, Joplin, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Tonya Wiskur sued Karl Johnson for damages arising out of a motor vehicle accident involving Johnson's moving vehicle and Wiskur's parked vehicle. Wiskur contends that the trial court erred by submitting the failure to keep a careful lookout verdict director, MAI 17.05, instead of her proposed non-MAI instruction, which was a modification of the rear-end collision verdict director, MAI 17.16. We agree. The trial court abused its discretion by refusing to submit Wiskur's proposed instruction; thus, we reverse the judgment and remand for a new trial.

During the morning of November 4, 2000, Wiskur and her husband drove their van to King Jack Soccer Park in Webb City to attend their child's soccer game. Wiskur was also coaching the game, and after her husband parked her van, she went to the rear of the van to unload her soccer equipment. While Wiskur was leaning into the back of the van with her left leg braced against the rear bumper to support her weight, another car collided with the front of her van, causing her van to move and injure her left knee. Wiskur sought medical care for the knee, and the knee eventually required surgery to relieve the pain resulting from the injury.

Karl Johnson was driving the vehicle that struck Wiskur's van. His vehicle had been parked a car- or car-and-a-half-length

in front of Wiskur's van, and Johnson was attempting to back his vehicle through an open space in between Wiskur's van and a third car. A trash barrel was sitting on the left side of his car, and the open space between Wiskur's van and the third car was on the right side of Wiskur's van. Johnson testified that he saw Wiskur's van as soon as he began to move his car. He moved his car back and forth a few times as he tried to avoid hitting the trash barrel but still position his car so he could successfully navigate through the open space. Johnson testified that on his last pass in the direction of Wiskur's van, he "thought [he] had [enough] clearance" between the van and the third car to avoid hitting the van. Although the force of the impact was disputed, Johnson admitted that the rear of his car did collide with the front of Wiskur's van.

Wiskur brought a negligence action against Johnson in Jasper County, Missouri, to compensate her for the injury to her knee. At the conclusion of the jury trial, Wiskur proffered the following non-MAI verdict director:

Your verdict must be for Plaintiff if you believe:

First, Defendant's automobile came into collision with Plaintiff's parked automobile, and

Second, Defendant was thereby negligent, and

Third, as a direct result of such negligence, Plaintiff sustained damage.[1]

Wiskur modeled her verdict director after the rear-end collision verdict director, MAI 17.16, which is based on the premise that the collision of a following vehicle into the rear of a leading vehicle creates a prima facie case of negligent conduct by the op-

erator of the following vehicle, but the trial court refused to submit Wiskur's verdict director to the jury. Instead, the trial court submitted the failure to keep a careful lookout ("lookout instruction") verdict director, MAI 17.05, proffered by Johnson, to the jury:

Your verdict must be for [P]laintiff if you believe:

First, [D]efendant failed to keep a careful lookout, and

Second, [D]efendant was thereby negligent, and

Third, as a direct result of such negligence, [P]laintiff sustained damage.[2]

Wiskur objected to the lookout instruction because it required the jury to determine whether Johnson could have avoided the accident had he seen Wiskur's van, and the fact that Johnson saw Wiskur's van before moving his car was not a fact in contention. Johnson admitted that he saw the car before hitting it, Wiskur argued, and that was all he should have seen to enable him to avoid the accident. Wiskur also argued that her proposed verdict director, which was based on the premise that the collision of a moving vehicle with a parked car creates a prima facie case of negligent conduct by the operator of the moving vehicle, was valid.

The trial court overruled Wiskur's objection and the jury returned a verdict in favor of Johnson; the court subsequently entered a judgment in favor of Johnson and against Wiskur. Wiskur now appeals that judgment.

■ Initially, we shall address whether the given instruction, MAI 17.05, was the proper instruction under the facts of

---

1. The verdict director also defined the words "negligent" and "negligence" but those definitions are unrelated to the point on appeal.

2. The verdict director also defined the words "negligent" and "negligence" but those definitions are unrelated to the point on appeal.

480

this case. Whether a jury was properly instructed is a question of law. *Hosto v. Union Elec. Co.*, 51 S.W.3d 133, 142 (Mo. App. E.D.2001). A trial court gives or refuses a particular instruction according to the law and the evidence in the case. Rule 70.02(a); *First State Bank of St. Charles, Missouri v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D.2002). Rule 70.02(b) requires the exclusive use of the Missouri Approved Instructions whenever the approved instructions contain an instruction applicable to the case. A trial court's instructional error is reversible if the error substantially prejudiced a party. *Kenney v. Wal–Mart Stores, Inc.*, 100 S.W.3d 809, 813 (Mo. banc 2003).

█ The essence of the lookout instruction is a failure to see and a failure to act. *Lovelace v. Reed*, 486 S.W.2d 417, 418–19 (Mo.1972). The failure to see involves a motorist's failure to become aware of other motorists, pedestrians, or objects that present a dangerous situation, and the failure to act is the motorist's failure to take precautionary action to avoid that danger. *Miller v. St. Louis Public Service Co.*, 389 S.W.2d 769, 771 (Mo.1965). In other words, "The 'lookout' duty requires motorists to exercise the highest degree of care to discover the presence of other persons and objects upon the streets and highways and to become aware of dangerous situations and conditions." *Allen v. Andrews*, 599 S.W.2d 262, 265 (Mo.App. S.D.1980). For a lookout submission to be proper, substantial evidence must show that the breach of that duty was the proximate cause of the accident. *Cypret v. Templeton*, 912 S.W.2d 630, 632 (Mo.App.

E.D.1995). The proper test of failure to keep a careful lookout as the proximate cause is whether the driver of the colliding vehicle, exercising the highest degree of care, could have seen the other vehicle in time to have taken effective precautionary measures to avoid the accident. *Marshall v. Bobbitt*, 482 S.W.2d 439, 442 (Mo.1972).[3]

In *Doyle v. Wilmesherrer*, the Missouri Supreme Court considered the propriety of a lookout submission in a case where the defendant was aware of the plaintiff's position during the entire time the alleged negligence occurred. 358 S.W.2d 837 (Mo. 1962). In that case, the defendant was backing a flat-bed truck loaded with grain up a ramp and into a hallway where the grain could be shoveled into a bin. *Id.* at 838. The defendant asked the plaintiff to go to the top of the ramp to help direct the operation of the truck up the ramp. *Id.* The plaintiff walked up the ramp and stood to the side of the hallway. *Id.* As the defendant attempted to back the truck up the ramp, the truck slid sideways into the plaintiff and injured him. *Id.* Upon review of the plaintiff's lookout instruction, the supreme court stated, "A proper lookout on the part of [the] defendant would have revealed nothing that he did not already know, and the failure to maintain a lookout in that circumstance could hardly be the proximate cause of [the] plaintiff's injury." *Id.* at 840.

█ Here, like the truck-driving defendant above, Johnson was aware of Wiskur's parked car the entire time the alleged negligence occurred. He stated that as he began to back his car out of his

3. By citing to *Allen* and *Marshall*, we do not mean to imply that the highest degree of care was the appropriate standard of care for this case. That issue was not presented to us because the parties seem to agree that ordinary care was the appropriate standard of care. *See Doolin v. Swain*, 524 S.W.2d 877,

880–81 (Mo.1975) (explaining that although motor vehicle drivers must exercise the highest degree of care when operating motor vehicles on public streets and highways, they must only exercise ordinary care when operating motor vehicles in private parking lots).

parking space, he noticed that Wiskur's car was a car- or car-and-a-half-length behind his car. He remained aware of Wiskur's car as he attempted to back out of his space, because he repeatedly drove backward and forward to position his car so he could navigate through the empty space to the right of Wiskur's car. And although he thought he had enough clearance, he misjudged the position of one of the two cars and collided with Wiskur's van. As in *Doyle*, a proper lookout would not have revealed to Johnson anything he did not already know. He knew that Wiskur's van was behind him and according to his testimony he was actively trying to avoid hitting it. Thus, the failure to maintain a careful lookout was not the proximate cause of Wiskur's injury. Because substantial evidence did not exist to support a finding that the failure to keep a lookout proximately caused Wiskur's injury, the lookout instruction was an improper instruction for the jury.

We now turn to the issue of whether the trial court properly refused to submit Wiskur's proposed non-MAI instructions. Wiskur contends that she was entitled to submit her instructions and the trial court's refusal to submit them was prejudicial. Thus, she argues that the trial court's refusal was an abuse of discretion.

■■■ A plaintiff is entitled to instruct a jury upon any theory supported by the evidence. *Egelhoff v. Holt*, 875 S.W.2d 543, 548–49 (Mo. banc 1994); *Jines v. Young*, 732 S.W.2d 938, 949 (Mo.App. S.D. 1987). When a party claims that the trial court erroneously refused to submit an instruction to which she was entitled, we review the trial court's refusal to submit the instruction for abuse of discretion. *Frankel*, 86 S.W.3d at 173 (Mo.App. E.D. 2002). A proper instruction must be supported by substantial evidence. *Id.* "Substantial evidence is that evidence which, if

true, is probative of the issues and from which the jury can decide the case." *Id.* We must view the evidence and all reasonable inferences supported by it in the light most favorable to the submission of the instruction and disregard any contrary evidence. *Id.* We will not reverse a verdict due to the refusal to give an instruction unless the error was prejudicial. *Id.*

■■■ If the MAI instructions do not contain an instruction applicable to the case, then a non-MAI instruction may be used if it is simple, brief, impartial, free from argument, and it does not submit detailed evidentiary facts to the jury or require the jury to find such facts. Rule 70.02(b). We review a proposed non-MAI instruction to determine " 'whether the jury [could have understood] the instruction and whether the instruction follow[ed][the] applicable substantive law by submitting the ultimate facts required to sustain a verdict.' " *Seitz v. Lemay Bank and Trust, Co.*, 959 S.W.2d 458, 462 (Mo. banc 1998) (quoting *Brown v. Van Noy*, 879 S.W.2d 667, 672 (Mo.App. W.D.1994)). What the ultimate facts are in a given case are determined on a case-by-case basis. *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 658 (Mo.App. E.D.1999). This determination depends on the specific theory of negligence the plaintiff presented. *Id.*

■■■ Here, the ultimate fact for the jury to decide was whether Johnson's operation of his car in the parking lot was negligent. Johnson admitted to seeing Wiskur's van before he began moving his car, and although he thought he would avoid hitting it, he did hit it. Thus, the question for the jury was whether Johnson exercised the appropriate standard of care as he was exiting the parking lot. Wiskur's instruction would have submitted that issue to the jury in a simple, brief, impartial, non-argumentative manner.

Her proposed non-MAI instructions could be easily understood by the jury and submitted all the ultimate facts necessary to sustain a verdict. The refusal to submit the verdict director to which Wiskur was entitled was prejudicial to Wiskur, and therefore, the court abused its discretion by refusing to submit Wiskur's instruction. The judgment is reversed and the cause is remanded for a new trial.

GARRISON, P.J., and PREWITT, J., concur.