**M.E.S. and M.J.S., Plaintiffs–Appellants,**

v.

**DAUGHTERS OF CHARITY SERVICES OF ST. LOUIS, Defendants–Respondents.**

No. 72510.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 25, 1998.

Danis, Cooper, Cavanagh & Hartweger, L.C., David O. Danis, St. Louis, for plaintiffs–appellants.

Lashly & Baer, P.C., Kenneth C. Brostron, Sarah K. Hackworth, St. Louis, for defendants–respondents.

KAROHL, Judge.

Appellants M.E.S. and M.J.S. (plaintiffs) appeal after the trial court denied their motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. They sued the Daughters of Charity Services of St. Louis, Inc., d/b/a DePaul Hospital (DePaul), Jerold J. Kreisman, M.D., P.C., and Dr. Jerold J. Kreisman (Dr. Kreisman), for medical malpractice while M.E.S. was a mental patient at DePaul in October, 1993. The jury found for defendants. Plaintiffs appeal only the judgment for DePaul. We affirm in part and reverse and remand in part.

The relevant facts are not in dispute. Throughout her life, authority figures sexually victimized M.E.S. This victimization caused various psychological problems. On October 12, 1993, M.E.S. was admitted into DePaul for treatment. The psychiatrist in charge of her care was Dr. Kreisman. His initial psychiatric evaluation of her included conclusions that she suffered from borderline personality disorder as well as multiple personality disorder. The psychiatric social worker partially responsible for the care of M.E.S. at DePaul was David Huebner (Huebner). Huebner was a recent graduate of the George Washington Brown School of Social Work at Washington University, and began working for DePaul just before M.E.S. was admitted to DePaul.

Soon after Huebner started working with M.E.S., he began a sexual relationship with her. This relationship included incidents of sexual intercourse both inside and outside hospital grounds, and continued even after she was released from DePaul's care. She suffered extensive psychological trauma as a result of her treatment at DePaul. On October 20, 1995, the plaintiffs filed this medical malpractice suit against DePaul, Jerold J. Kreisman, M.D., P.C., and Dr. Kreisman individually. M.J.S. also filed a loss of consortium claim against the defendants. On February 6, 1997, the court entered judgments for all defendants in accord with the jury verdicts.

On March 7, 1997, plaintiffs filed motions for judgment notwithstanding the verdict or for a new trial. In their post trial motions, they alleged two defense witnesses, Raymond Fezzi (Fezzi) and Clark Burton (Burton) had committed perjury and fraud during the trial and DePaul and its attorneys were guilty of a pattern of deception. Fezzi was Huebner's supervisor at St. Anthony's Medical Center (St.Anthony's) during Huebner's student practicum, prior to his employment at DePaul. In addition, plaintiffs alleged they had newly discovered evidence, referring to a prior St. Anthony sexual misconduct allegation against Huebner and DePaul's knowledge of the complaint before the subject treatment and misconduct. These motions were based on post-trial depositions of Fezzi, Burton, and Huebner. All three were re-deposed by the plaintiffs after having been previously deposed before the trial. The motions were also supported by an affidavit of Huebner which stated: (1) after he completed his practicum at St. Anthony's, a female patient filed a complaint with St. Anthony's alleging that he had had sexual relations with her; (2) he learned of the complaint while he was working at DePaul; and (3) he told his DePaul supervisor, Burton, about the allegation before he began working with M.E.S. Plaintiffs filed suggestions in support of their motion. The court denied the motions after finding: (1) there was no substantial evidence of willful perjury by Burton; (2) the result of the trial would not have been different had any additional evidence been admitted; and (3) there was substantial evidence to support the verdict. In a footnote, the court observed plaintiffs could have discovered, prior to trial, the evidence provided in support of their motions. It also noted the evidence in question would not have, to the

extent it was admissible, affected the outcome of the trial.

Plaintiffs raise two points of error. They first argue the trial court erred in denying their motion for a new trial because: (1) the verdicts were the product of misconduct by DePaul and its attorneys in that they deliberately suppressed a key document during discovery; (2) the verdicts were the product of perjury by DePaul's witnesses in that they lied about material facts during depositions and at trial; and (3) the newly discovered evidence, wrongfully withheld by DePaul and its attorneys during discovery and at trial, would have changed the outcome of the trial. There are no facts to support a finding of misconduct of counsel. Plaintiffs' second point argues the trial court erred in denying their motion for judgment notwithstanding the verdict because it was undisputed that Huebner had wrongful sexual relations with M.E.S., and DePaul was vicariously liable for this conduct. This point is summarily denied because plaintiffs were not entitled to judgment on the liability issue as a matter of law. Accordingly, we review two issues: (1) were the verdicts the product of perjury; and (2) was evidence discovered after the trial newly discovered evidence. In either event there must be a new trial.

The post-trial depositions of the trial witnesses contain admissions that they testified falsely regarding knowledge of a complaint of prior misconduct of Huebner and DePaul's knowledge of the incident before it allowed Huebner to treat M.E.S. During pre-trial discovery, plaintiffs filed a request for documents. In particular, they requested from DePaul Huebner's complete personnel file. DePaul objected to the production of the entire file, alleging it contained incident reports prepared in anticipation of litigation and, therefore, was privileged and immune from discovery. They also claimed the file contained documents dated subsequent to Huebner's treatment of M.E.S., and therefore, were irrelevant or not admissible as evidence, or reasonably calculated to lead to the discovery of admissible evidence. The court ordered DePaul to produce all documents in Huebner's employment file not objected to on the basis of attorney-client privilege. It did not sustain DePaul's objection to production of any part of the file dated after Huebner treated M.E. S.

■ Huebner's DePaul employment file contained notes taken by his supervisor, Burton, in response to an August 1994, telephone call from the Executive Director of the Advisory Committee for Licensed Clinical Social Workers. The notes refer to a complaint the committee received concerning an incident while Huebner was at St. Anthony's. DePaul argues the document was not subject to subpoena, since the trial court sustained their objection. The court ruling provided DePaul with no such protection. The document was not the subject of attorney-client privilege and was not work product, as Burton wrote it over a year before the plaintiffs filed suit. The existence of this document was hidden from plaintiffs before and during trial. It was "newly discovered evidence" after the trial.

■ Rule 56.01 allows discovery regarding any matter, not privileged, which is relevant to the subject matter in a pending action. A party may not object to the discovery solely because the requested information may be inadmissible at trial if that information appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* However, there is a privilege against disclosure of work product prepared in anticipation of litigation. A document is prepared in "anticipation of litigation" or for trial, when, in light of the nature of the document and the factual situation in particular case, the document can fairly be said to have been prepared or obtained in anticipation of litigation. Rule 56.01(b)(3); *State ex rel. Safeco National Insurance Co. of America v. Rauch*, 849 S.W.2d 632, 634 (Mo.App.E.D. 1993). The facts will not support a finding the withheld document was privileged or that the ruling on defendants' objections to produce excused withholding the subject document.

■ DePaul also argues the document was not relevant to the suit. This argument fails. The disputed fact issue was whether DePaul could or should have foreseen their employee would engage in sexual relations with a men-

tal patient during the patient's DePaul hospitalization. The document would have provided plaintiffs with evidence DePaul knew there had been a prior sexual misconduct allegation made against Huebner. DePaul's counsel argued in closing argument "there was no history of sexual misconduct by anybody." In the post-trial re-deposition, Huebner testified he specifically informed Burton about the allegation *before* he began working with M.E.S. The withheld document would have been admissible as proof of knowledge, and countered Burton's trial testimony in which he denied knowledge. Huebner's affidavit creates a factual issue as to exactly what DePaul knew regarding Huebner when it assigned him to treat M.E.S. Since the document was created before this lawsuit, was relevant to preparation and trial of the case, and could have led to the discovery of admissible evidence, no privilege attached to it, the document was subject to discovery. The court ruling on DePaul's motion obligated DePaul to produce the document.

There is also a problem with the testimony of St. Anthony's employee, Fezzi, and his testimony during his pre-trial deposition and at trial. His pre-trial deposition and trial testimony was untruthful and hid from the plaintiffs, the jury, and the court knowledge of the complaint against Huebner that was similar to his mistreatment of M.E.S. At his pre-trial deposition, Fezzi was asked what documents he reviewed in preparation for his deposition. An attorney for St. Anthony's who was present at the deposition, but not at trial, instructed Fezzi not to answer with respect to anything that may have occurred after he had communications with DePaul because it would be irrelevant to this lawsuit. He had communicated with Burton when Burton asked Fezzi about Huebner's work performance at St. Anthony's. This communication occurred before Burton hired Huebner at DePaul. Plaintiffs' counsel told Fezzi to answer, subject to the objection. Counsel for St. Anthony's then responded "[y]eah, subject to that, go ahead and answer, not anything after any communications with DePaul if there is any such thing, but up to that point you can tell him anything you had." Fezzi did not disclose that he had in his possession a letter concerning the St. Antho-

ny's sexual misconduct allegation. Counsel also asked Fezzi to list all of the specific incidents of "boundary violations" that he recalled having to do with Huebner during his practicum. Fezzi defined "boundaries" as the need to maintain a working relationship with the patient where the therapist does not have any personal contact outside of the work setting or treatment setting. Fezzi described four separate instances of what he felt were boundary violations involving Huebner, but did not mention the allegation of sexual misconduct made against Huebner by a former patient. At trial, during in chambers voir dire examination, when again asked to list all of Huebner's boundary violations, Fezzi failed to disclose the sexual misconduct complaint. At that time, there was no objections and no legal basis to withhold the information.

During his post-trial deposition, Fezzi explained he did not mention the complaint during his pre-trial deposition or at trial because he was following the instruction he received from St. Anthony's attorney at the beginning of his pre-trial deposition. We find there is no factual or legal justification for either act of intentional false testimony. Fezzi failed to disclose information during his deposition that was directly relevant on the issue of DePaul's knowledge, a disputed fact issue. This withheld testimony, and the document DePaul did not produce, would have informed the plaintiffs of a prior allegation of sexual misconduct against Huebner. This information, in turn, could have provided the plaintiffs the opportunity to present to the jury evidence that DePaul had knowledge of the allegation before it allowed Huebner to work with M.E.S. and to counter Burton's denial of knowledge.

Fezzi's reference to instructions he received during his pre-trial deposition will not excuse his obligation not to give false testimony at trial. Moreover, Fezzi relied on instructions from an attorney who represented St. Anthony's, not a party to the suit. The court never limited Fezzi's testimony, as DePaul contends, to knowledge and documents he had prior to his correspondence with DePaul. The only such limitation placed on Fezzi was by the objection of St.

Anthony's counsel during his pre-trial deposition, and that was withdrawn when Fezzi was told to answer, subject to the objection. The court did limit plaintiffs' questions of Fezzi at trial, but the court based this limitation on Fezzi's in chambers voir dire testimony, where he specifically failed to disclose the secreted complaint to the judge.

■■■■ Granting a new trial on the ground of perjury requires a showing that the witness willfully and deliberately testified falsely. *A.M.S. By and Through M.E.S. v. J.L.B.*, 723 S.W.2d 891, 892 (Mo.App. E.D. 1985). While it may be within the discretion of the trial court to determine whether perjury occurred and whether an improper verdict resulted, we will reverse such a denial of a new trial on the basis of perjury if the trial judge abused his discretion. *In re Marriage of Clark*, 813 S.W.2d 123, 125 (Mo.App. S.D. 1991). Fezzi admitted in his post-trial deposition that he was aware of the prior complaint at the time of his deposition and the trial, and he intentionally withheld it. His failure to admit knowledge of the allegation during his testimony at trial on a relevant factual dispute was admitted perjury on a relevant issue, DePaul's knowledge. Burton denied knowledge of the complaint. His denial is opposed by Huebner's post-trial affidavit, but credibility is for a jury to determine.

■■■■ Plaintiffs also argue for a new trial based on newly discovered evidence. Such motions are left to the sound discretion of the trial judge, viewed with disfavor, and are granted only in exceptional circumstances. *Greco v. Robinson*, 747 S.W.2d 730, 734 (Mo. App.1988). Such motions must be supported by evidence that only recently came into movant's knowledge and which due diligence would not have uncovered the evidence sooner. The evidence must be so material that it would probably produce a different result. It may not be cumulative; nor be evidence offered to impeach the character or credibility of a witness; and the testimony of the witness must be produced, or in its absence, accounted for. *City of Eureka v. Hall*, 687 S.W.2d 917, 920 (Mo.App.1985). Plaintiffs did not ask Huebner in his pre-trial deposition whether any other patients had ever accused him of sexual misconduct. During in chambers voir dire examination, Fezzi specifically disclosed Huebner had reported a separate incident to Washington University. Plaintiffs did not attempt to discover more information about that incident. The possibility of discovery of the St. Anthony's complaint was uncertain. What is certain is that the evidence, if discovered from some source other than St. Anthony's or DePaul, could have changed the outcome of the trial. The withheld evidence would have changed the trial by providing plaintiffs an opportunity to counter the testimony of Fezzi and Burton. It is not certain the evidence would have produced an opposite result because the result would require resolution by the jury of a factual dispute based on the evidence, including the unavailable evidence. The admittedly false testimony is sufficient grounds to warrant a new trial. Thus, the dispute as to whether the undisclosed facts were "newly discovered evidence" or not, will not change the result.

■■■■ The trial court did not err in denying a judgment notwithstanding the verdict. We review this point to determine whether plaintiff made a submissible case, and is entitled to judgment as a matter of law. *Gillespie v. St. Joseph Light & Power Co.*, 937 S.W.2d 373, 375 (Mo.App. W.D.1996). A submissible case is one in which each and every fact essential to liability is predicated upon legal and substantial evidence. *Id.* Here, the trial on the disputed and relevant issue of knowledge did not occur. Hereafter, if there is evidence to support a finding DePaul had prior knowledge of the St. Anthony's allegation, there will also be evidence that directly contradicts such a finding. Thus, plaintiffs are not entitled to a judgment on the issue of liability as a matter of law.

■■■■ We review the denial of a motion for new trial on the basis of abuse of discretion. *Wright v. Over-the-Road and City Transfer Drivers, Helpers, Dockmen, and Warehousemen*, 945 S.W.2d 481, 489 (Mo. App. W.D.1997). In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must

be prejudicial to the party seeking the new trial. *Id.* at 489–490. The cumulative actions of Fezzi and DePaul prevented plaintiffs, and ultimately, the jury as well, from learning: (1) that a former patient accused Huebner of having a sexual relationship with her prior to his employment with DePaul; (2) DePaul had knowledge of Huebner's background and work history; and (3) such knowledge about Huebner was probative and relevant as to plaintiffs' claims against DePaul. However, there remains a factual dispute as to whether DePaul had knowledge and was thereby on notice of the allegation of prior sexual misconduct attributable to Huebner by a former St. Anthony's patient before it permitted him to "treat" M.E.S. On these facts it was an abuse of discretion to deny plaintiffs a new trial on the ground the verdict was the product of perjured testimony.

Accordingly, we reverse and remand for new trial.

ROBERT G. DOWD, Jr., C.J., and PUDLOWSKI, J., concur.