George McCULLOUGH and James
Cranston, Appellants,

v.

COMMERCE BANK, Respondent.

No. WD 71625.

Missouri Court of Appeals,
Western District.

July 26, 2011.

As Modified Aug. 30, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 30, 2011.

Application for Transfer Denied
Oct. 25, 2011.

Patrick G. Reavey, Kansas City, MO, for appellants.

Kimberly A. Jones and Christi J. Hilker–Vaglio, Kansas City, MO, for respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

George McCullough ("McCullough") and James Cranston ("Cranston") (collectively "Appellants") appeal from the trial court's judgment denying their motion for new trial after a jury trial resulted in a verdict in favor of Commerce Bank on claims of employment discrimination. Appellants contend that the trial court erred in: (1) applying the wrong standard to claims raised in their motion for new trial addressing the purported withholding of information which should have been produced in response to discovery; and (2) refusing to give four non-MAI jury in-

structions addressing pretextual termination. We affirm.

### Factual and Procedural History[1]

■ Appellants were employed by Commerce Bank in the Recovery Department. Once a Commerce Bank customer's account becomes delinquent, the account goes to Commerce Bank's Collections Department, where collectors attempt to make arrangements with the customers to pay off the account before the debt is "charged off" to the Recovery Department. Once the account is charged off to the Recovery Department, it is assigned to a Recovery Collector to attempt collection. The accounts are assigned based on the type of account and the alphabetical split of the customers' last names. The types of accounts that are charged off to the Recovery Department include bank card accounts, installment loans, and overdraft accounts. In addition to Recovery Collectors, Recovery Specialists repossess, recondition, and sell the collateral on secured installment loans.

In April 2006, McCullough, a 61–year old African–American, was employed as a Recovery Collector and had specific responsibility for collecting outstanding unsecured debt from Commerce Bank Card customers. Bank Card Collectors are assigned new accounts at the beginning of each month by an alphabetical split. McCullough's split was A–F.

In 2002, Ron Nesemeyer ("Nesemeyer") was the Manager of the Recovery Department. Nesemeyer prohibited Recovery Collectors from making changes to the collector codes in the computer system. The collector codes identified who had been assigned responsibility for an account. Nesemeyer prohibited the reassignment of collector codes to prevent collectors from reassigning accounts for self-serving reasons, i.e., to secure credit toward monthly goals. According to Nesemeyer, any change in a collector code required management approval.

On April 4, 2006, McCullough collected monies on an account (the "Gatzke account") which had been assigned to another employee, Bill Wright ("Wright"). McCullough claimed this was the result of a call he fielded from Mr. Gatzke's fiancé who wanted to pay the account by phone.

In order to receive credit for the monies collected, McCullough asked Cranston to change the collector code to move the account to McCullough's portfolio. Cranston changed the collector code. Cranston, a 35–year old Caucasian American, was employed as a Repossession Specialist. Cranston was responsible for repossessing, reconditioning, and selling collateral on secured loans. Cranston had no responsibility for collecting on Bank Card accounts. Cranston's change of the collector code at McCullough's request violated the policy put into place by Nesemeyer.

Wright complained to Deborah Turnbow ("Turnbow"), a Recovery Supervisor who supervised McCullough, who reported the complaint to Donna Dunn ("Dunn"), Cranston's direct supervisor. When confronted, Cranston admitted he changed the collector code to reflect McCullough's responsibility for the account, and added that he had done so with other accounts in the past. Dunn reported the unauthorized changes in the collector codes to Nesemeyer.

Appellants were terminated from employment following an investigation. The investigation revealed that Appellants had

---

1. We view the evidence in the light most favorable to the verdict. *Sterbenz v. Kansas* *City Power and Light Co.,* 333 S.W.3d 1 n. 1 (Mo.App. W.D.2010).

participated in four unauthorized account transfers.

Appellants were each issued a Right to Sue Letter from the Missouri Commission on Human Rights. In February 2007, Appellants filed their second amended petition against Commerce Bank alleging race and age discrimination in connection with their respective terminations from employment pursuant to the Missouri Human Rights Act ("MHRA"). Appellants contended that McCullough was terminated due to his race and age, and that Cranston was terminated to conceal the discrimination against McCullough. The matter went to a jury trial in June 2009. The jury found in favor of Commerce Bank. Appellants filed a motion for new trial which was denied following an evidentiary hearing.

Appellants filed this timely appeal.

### Point I

For their first point, Appellants claim that the trial court erred in denying their motion for new trial because it erroneously applied the standard for determining whether newly discovered evidence warrants a new trial under Rule 78.01 instead of a standard Appellant's claim, for the first time on appeal, should apply to determine whether the withholding of evidence warrants vacation of a judgment under Rule 74.06(b)(2). We disagree and affirm.

### *Standard of Review*

 Our standard of review of a trial court's action disposing of a motion pursuant to either Rule 74.06 or 78.01 is the same. The trial court is vested with broad discretion when acting on a motion to vacate a judgment pursuant to Rule 74.06 and this Court will not interfere with that action unless the record convincingly demonstrates an abuse of discretion. *Clark v. Clark,* 926 S.W.2d 123, 126 (Mo.App. W.D. 1996); *Nandan v. Drummond,* 5 S.W.3d

552, 555 (Mo.App. W.D.1999). Denial of a motion for new trial pursuant to Rule 78.01 is also reviewed for abuse of discretion. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993).

### *Analysis*

The opening paragraph of Appellants' motion for new trial asserts:

> COME NOW Plaintiffs, by and through their counsel of record and pursuant to Supreme Court Rules 74.06(b) and 78.01, and move the Court for a new trial in the above-captioned matter because of misrepresentations and misconduct by Defendant and their counsel. . . .

This opening paragraph was followed by the assertion of several claims of error warranting a new trial, only three of which are applicable to our discussion of Point One. First, Appellants claimed that Commerce Bank failed to reveal during discovery that Turnbow had a phone call with Mr. Gatzke's fiancé. Second, Appellants claimed that Commerce Bank failed to produce all records associated with the Gatzke account. Third, Appellants claimed that Commerce Bank failed to produce the personnel files for two terminated employees in response to discovery seeking the personnel files for all employees within the Recovery Department "terminated within the last five years."

The trial court conducted an evidentiary hearing to address Appellants' claims. The trial court then denied Appellants' request for a new trial on the basis of the claims. As to the documents regarding an alleged conversation between Turnbow and Mr. Gatzke's fiancé, the trial court found, "Plaintiffs have not shown that this evidence came to their knowledge since trial. Plaintiffs admit that they learned of the alleged telephone call a few days before trial. The Court also finds that Plaintiffs

have not shown that this evidence is so material it would probably produce a different result. Plaintiffs' first argument fails."

As to the Gatzke account records, the trial court found, "Plaintiffs have failed to show that this evidence is not cumulative or would produce a different result."

As to the personnel files of the two terminated employees, the trial court found that the documents clearly fell within the scope of Appellants' discovery requests and should have been produced. The trial court noted that the voluntary termination of both employees came to light at trial and that both personnel files were then made available to Plaintiffs' counsel during trial. Nonetheless, the trial court found:

> [P]laintiff has failed to meet the *Carthen*[2] standard. Plaintiff's counsel has not demonstrated that by the use of due diligence he would [not][sic] have been able to earlier discover the defendants' failure to produce the requested files. Plaintiff clearly had information by which to identify both employees who were hired at or near the time of Mr. McCullough's termination. Further, Plaintiffs have failed to demonstrate *how* this evidence would have affected the outcome of the trial. In point of fact, the terminations of both [employees] came to light during the trial. In the post-trial hearing there was no showing of what testimony or evidence would have been available to plaintiff, had the personnel files been timely produced.

[Errors in singular reference to "Plaintiff" appear in original.]

On appeal, Appellants do not contest the sufficiency of these findings. Appellants thus concede that none of the information withheld during discovery was "new evidence" which would have affected the outcome of trial. Appellants also concede that though some of the information should have been disclosed earlier, all of the information was available to Appellants shortly before or during trial, and its non-disclosure could not be separated from Appellants' lack of due diligence.

Notwithstanding, Appellants argue that the trial court should not have applied the *Carthen* standard, which required Appellants to prove that they exercised due diligence and/or that the withheld information (new evidence) would have affected the outcome of trial. Appellants' argument faces an insurmountable hurdle. The record reveals the trial court applied the proper standard to Appellants' claims, and in fact, the standard that Appellants' motion for new trial argued should apply.

Though the motion for new trial mentioned both Rule 74.06 and Rule 78.01 in the introductory paragraph, Appellants' subsequent discussion of the discovery issues did not assert that a different standard should be applied depending on the application of either Rule 74.06 or Rule 78.01. In fact, the motion made no further reference to either Rule.

 The only case cited by Appellants in their motion for new trial addressing the standard to be applied in determining whether a new trial is warranted as a result of withheld discovery was *M.E.S. v. Daughters of Charity Services of St. Louis*, 975 S.W.2d 477 (Mo.App. E.D.1998). *M.E.S.* addresses under what circumstances newly discovered evidence will

---

**2.** Referring to *Carthen v. Jewish Hospital of St. Louis*, 694 S.W.2d 787, 800–01 (Mo.App. E.D.1985), which we discuss, *infra*.

warrant the grant of a motion for new trial. *Id.* at 482. As in the case before us, the "newly discovered evidence" in *M.E.S.* was claimed to have been wrongfully withheld by the defendants during discovery. *Id.* at 480. As noted in *M.E.S.*, motions for new trial based on newly discovered evidence "are left to the sound discretion of the trial court, viewed with disfavor, and are granted only in exceptional circumstances." *Id.* at 482. "Such motions must be supported by evidence that only recently came into movant's knowledge and which due diligence would not have uncovered the evidence sooner." *Id.* "The evidence must be so material that it would probably produce a different result." *Id.*

Relying on *M.E.S.*, Appellants advised the trial court that the applicable standard to be applied to their motion was whether the claimed "withheld or new evidence, which could not have been discovered by the due diligence of the moving party, is a proper basis for a new trial." In keeping with this standard, Appellants argued that had the withheld information been produced, "a different verdict may have been rendered," and that the withheld information "hindered plaintiff's ability to pursue and present relevant information at trial."

In its response to the motion for new trial, Commerce Bank cited *Carthen v. Jewish Hospital of St. Louis*, 694 S.W.2d 787, 800–01 (Mo.App. E.D.1985) as another case articulating the standard to be applied to determine whether new evidence warrants the vacation of a judgment and the grant of a new trial. The standard described in *Carthen* is not materially distinguishable from the standard described in *M.E.S.*, and provides:

It is generally recognized that a party seeking a new trial on the ground of new evidence must show: (1) The evidence has come to his knowledge since trial, (2) due diligence would not have uncovered the evidence sooner, (3) the new evidence is so material it would probably produce a different result, (4) the new evidence is not cumulative, (5) the affidavit of the witness must be produced or its absence accounted for, and (6) the object of the evidence is not to impeach the character or credit [sic] of a witness.

*Id.* (quoting *Executive Jet M'gmt and Pilot Service, Inc. v. Scott*, 629 S.W.2d 598, 610 (Mo.App. W.D.1981)). Appellants sought and secured leave to file a reply to Commerce Bank's response. Appellants' reply did not contest the applicability of the standard described in *Carthen*. During the hearing conducted by the trial court on the motion for new trial, Appellants never argued that a standard other than that articulated in *M.E.S.* and *Carthen* applied to determine whether the purportedly withheld evidence warranted a new trial under either Rule 78.01 or Rule 74.06.

The trial court entered its order denying the motion for new trial having applied the standard described in both *M.E.S.* and *Carthen*. Appellants now claim that a different standard applies to determine whether Rule 74.06(b)(2) has been violated.[3] Specifically, Appellants argue that the mere negligent or unintended failure to produce evidence within the scope of propounded discovery constitutes "misconduct" under Rule 74.06(b)(2) warranting the vacation of the judgment, whether or not the withheld discovery might have im-

---

**3.** On appeal, Appellants have abandoned any claim that the trial court erred in denying the Motion for New Trial pursuant to Rule 78.01, and focus exclusively on Rule 74.06(b)(2). As previously noted, Appellants have also aban-

doned any argument that the trial court failed to properly apply the *M.E.S.* and *Carthen* standard to their claims that newly discovered evidence warranted a new trial.

pacted the outcome at trial. There are two problems with Appellants' claim.

■■■ First, Appellants never made this argument with the trial court. In fact, other than their vague reference to Rule 74.06 in the opening paragraph, Appellants never again mentioned Rule 74.06 in the motion for new trial, let alone Rule 74.06(b)(2), the particular subsection on which they now rely on this appeal. Appellants never alerted the trial court that they believed a standard other than the "newly discovered evidence" standard discussed in *M.E.S.* and *Carthen* applied to determine whether there had been a violation of Rule 74.06 warranting a new trial. Appellants' singular reference to Rule 74.06 in the opening paragraph of their motion for new trial was insufficient to raise the issue presented in this appeal with the trial court. *See In re Clarkson Kehrs Mill Transp. Development Dist.,* 308 S.W.3d 748, 753 (Mo.App. E.D.2010) (holding that vague, passing, and unrelated references are insufficient to preserve an issue). " 'An issue raised for the first time on appeal and not presented to or decided by the trial court is not preserved for appellate review.' " *Belden v. Donohue,* 325 S.W.3d 515, 518 (Mo.App. S.D.2010) (citation omitted). Moreover, having assured the trial court that the standard set forth in *M.E.S.* and *Carthen* was the standard to be applied to assess whether Appellants were entitled to a new trial under either Rule 74.06 or Rule 78.01, Appellants cannot now complain that the trial court erred in failing to apply an altogether different standard. This Court will not " 'convict a lower court of error on an issue that was not put before it to decide.' " *Baker v. Gonzalez,* 315 S.W.3d 427, 435

(Mo.App. S.D.2010) (citation omitted). Simply put, a party cannot rely on one theory to set aside a judgment before the trial court then, when unsuccessful, rely upon a different theory on appeal. *Anderson v. Anderson,* 869 S.W.2d 289, 292 (Mo.App. S.D.1994).

■■ Second, even had Appellants adequately preserved the claim they now assert on appeal, Appellants would not prevail. Their contention that a violation of Rule 74.06(b)(2) sufficient to warrant the grant of a new trial requires no more than a showing of an inadvertent failure to produce information within the scope of propounded discovery without regard to the impact that information may have had on the outcome at trial is not supported by any authority in Missouri.

Rule 74.06(b)(2) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: ... (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." During the evidentiary hearing conducted by the trial court on the motion for new trial, Appellants admitted that they were not suggesting that Commerce Bank's counsel actively misled the Appellants. Appellants neither alleged nor argued that Commerce Bank's counsel engaged in fraud or purposeful misconduct.[4]

Missouri courts have routinely required proof of fraud or purposeful misconduct by clear and convincing evidence to support vacating a judgment in reliance on Rule 74.06(b)(2). *See State ex rel. Willey Enters., Inc. v. City of Kansas City,* 848 S.W.2d 14, 16–17 (Mo.App. W.D.1992) (ci-

---

4. Specifically, in arguing the lack of production of the personnel documents and the Gatzke account documents, Appellants stated "I am not saying that defense counsel actively

misled me...." Later, in arguing a witness exclusion rule issue, Appellants stated, "[C]ertainly we are not trying to, you know, accuse misconduct."

tations omitted). Similarly, the Eighth Circuit, in construing Fed.R.Civ.P. 60(b)(3), the federal counterpart to Rule 74.06(b)(2), requires a party to show " 'with clear and convincing evidence that the opposing party engaged in fraud or misrepresentation that prevented the movant from fully and fairly presenting its case.' " *Murphy v. Mo. Dep't of Corr.*, 506 F.3d 1111, 1117 (8th Cir.2007) (citation omitted).

Notwithstanding this precedent in Missouri and the Eighth Circuit, Appellants rely on decisions from other federal circuits for the proposition that Fed.R.Civ.P. 60(b)(3) does not require either purposeful misconduct, or evidence of a likely impact on the outcome of the trial, as conditions to the grant of a new trial if evidence within the scope of propounded discovery has been withheld. We need not detain ourselves with a discussion of this authority, as it is of no precedential value in our construction of Rule 74.06(b)(2). No Missouri authority supports the assertion that an inadvertent failure to produce information required by discovery constitutes *per se* "misconduct" under Rule 74.06(b)(2) warranting a new trial, and certainly not in the absence of proof that the information would have had a probable impact on the outcome at trial and/or on a party's meaningful ability to present their case.

The trial court did not abuse its discretion in denying Appellants' motion for new trial on the basis of claimed new evidence which should have been produced in response to discovery. Point One is denied.

## Point II

In their second point, Appellants contend that the trial court's refusal to give four non-MAI jury instructions on pretext

was error and substantially prejudiced Appellants. Appellants contend that the tendered instructions were supported by the substantive law and the evidence in the case because the jury was presented with an overwhelming amount of pretext evidence that would have permitted them to infer discrimination.[5] We disagree.

### Standard of Review

■ Appellants contend that the applicable standard of review is *de novo*. It is true that whether the trial court has properly instructed the jury is a question of law and, thus, subject to *de novo* review. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003). This is not a case, however, whether the trial court is accused of failing to instruct the jury in the manner required by law. In fact, Appellants concede that the trial court gave the proper MAI instructions in this case, and that the MAI verdict director applicable to the case, MAI 31.24, correctly states the law.

■ Instead, this case involves the trial court's refusal to submit non-MAI instructions. "When a party claims that the trial court erroneously refused to submit an instruction to which she claims she was entitled, we review the trial court's refusal to submit the instruction for abuse of discretion." *Wiskur v. Johnson*, 156 S.W.3d 477, 481 (Mo.App. S.D.2005); *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 97 (Mo. banc 2010); *Quinn v. Lenau*, 996 S.W.2d 564, 569 (Mo.App. E.D.1999); *see also State v. Allen*, 274 S.W.3d 514 (Mo.App. W.D.2008) (holding not an abuse of discretion for trial court to refuse to submit additional cautionary instructions where there is applicable, required MAI). "A trial court will be found

---

**5.** Appellants raised this issue in their motion for new trial, which was denied. Technically, Appellants' point relied on should have been framed as claiming error by the trial court in denying their motion for new trial based on the failure to tender non-MAI pretext instructions offered by the Appellants.

to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Fleshner*, 304 S.W.3d at 97–8. Even then, "[t]his Court will not reverse a verdict due to instructional error, including the refusal to give an instruction, unless the error is prejudicial, materially affecting the merits of the action." *City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181, 197 (Mo.App. E.D.2004) (citing *First State Bank of St. Charles, Missouri v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D.2002)).

Thus, we review the trial court's refusal to submit Appellants' non-MAI pretext instructions for abuse of discretion, and to determine whether the failure to give the tendered instructions materially affected the merits of the action.

### Analysis

Rule 70.02(a), which governs instructions to juries, declares that jury instructions "shall be given or refused by the court according to the law and the evidence in the case." "The imperative 'shall' in Rule 70.02(a) does not admit discretion on the part of the trial judge if the proffered instruction is supported by the evidence *and the law* and is in proper form." *Marion v. Marcus*, 199 S.W.3d 887, 892 (Mo. App. W.D.2006) (emphasis added). Rule 70.02(b) provides, "Whenever Missouri Approved Instructions ("MAI") contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." *"To require the giving of a non-MAI, a party must prove that the MAI instructions submitted to the jury misstate the law."* *McBryde v. Ritenour School Dist.* 207 S.W.3d 162, 168 (Mo.App. E.D.2006) (em-

phasis added); *City of Kansas City v. Habelitz*, 857 S.W.2d 299, 303 (Mo.App. W.D.1993).

Appellants brought their claims pursuant to the MHRA. Discrimination is defined in section 213.010 of the MHRA as "any unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment.…" Section 213.010(5). "Therefore, in enacting the MHRA, the legislature sought to prohibit any consideration of race or other improper characteristic no matter how slight in employment decisions. The plain meaning of the MHRA imposes liability on an employer when an improper consideration is a contributing factor, regardless if other factors also exist." *McBryde*, 207 S.W.3d at 170.

In 2005, a pattern verdict-directing instruction for MHRA employment discrimination cases, MAI 31.24, was adopted. The instruction provides:

**Your verdict must be for plaintiff if you believe:**

**First, defendant** *(here insert the alleged discriminatory act, such as "failed to hire", "discharged" or other act within the scope of Section 213.055, RSMo)* **plaintiff, and**

**Second,** *(here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability)* **was a contributing factor in such** *(here, repeat alleged discriminatory act, such as "failure to hire", "discharge", etc.),* **and**

**Third, as a direct result of such conduct, plaintiff sustained damage.**

**\*** **[unless you believe plaintiff is not entitled to recover by reason of Instruction Number** _____ *(here insert number of affirmative defense instruction)* **].**

Before the adoption of MAI 31.24 in 2005, Missouri courts were guided by federal authority for the analysis of claims under the MHRA. However, as stated by the Missouri Supreme Court in *Daugherty v. City of Maryland Heights*, "Missouri employment discrimination law in a post-MAI 31.24 environment should more closely reflect the plain language of the MHRA and the standards set forth in MAI 31.24 and rely less on analysis developed through federal case law." 231 S.W.3d 814, 819 (Mo. banc 2007). In deciding an MHRA case, we are guided by Missouri law, and by federal employment discrimination case law to the extent it is *consistent* with Missouri law. *Id.* at 818. We are not bound by federal authority that is in conflict with the plain meaning of the MHRA. *McBryde*, 207 S.W.3d at 168. As a result of *Daugherty*, therefore, Missouri abandoned the burden shifting analysis customarily employed in federal discrimination cases.[6]

Appellants tendered four separate instructions (one for each of the Appellants' two claims of age and race discrimination) regarding pretext. Each of the four proposed instructions provided that:

> If you find that the stated reasons for [Appellants'] terminations are not the true reasons why [Commerce Bank] terminated [Appellants'] employment, you may, but need not, find that the stated reasons are pretext to hide [Commerce Bank's] intent to discriminate and conclude that [appellants'] [race or age] was a contributing factor in [Commerce Bank's] decision to terminate his employment.

The trial court rejected the proposed instructions because they were non-MAI approved instructions. The trial court instead submitted MAI 31.24 for each of the Appellants' four claims.

Appellants did not argue in their Motion for New Trial, and do not argue on appeal, that the trial court was required to give the non-MAI pretext instructions because the MAI instructions, specifically MAI 31.24, misstate the law. *See McBryde*, 207 S.W.3d at 168. In fact, Appellants concede that MAI 31.24 accurately states the law in Missouri. Notwithstanding, Appellants rely on a series of federal cases suggesting that juries can be confused about the weight to be afforded pretext evidence to argue that a separate instruction should be given advising jurors that they can infer discriminatory intent if they find an employer's explanation for an employee's termination is pretextual.

In denying Appellants' motion for new trial, the trial court found, "that an instruction allowing the jury to infer or assume that discrimination occurred based on the falsity of Defendant's reason for Plaintiffs' termination would have been inconsistent with the MHRA and the Mis-

---

6. "Under federal law, there are two avenues by which employment discrimination plaintiffs survive summary judgment—either by presenting direct evidence of discrimination or, if no direct evidence is available, by using the burden-shifting model established in *McDonnell Douglas v. Green*, 411 U.S. 792, 800–01, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It is clear that the Eighth Circuit continues to use the *McDonnell Douglas* standard in employment discrimination cases where there is no direct evidence of discrimination. However, if an employee offers direct evidence of discrimination, the standard outlined in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is applied. This standard requires the employee to produce direct evidence that age or disability 'played a motivating part in [the] employment decision.' The burden then rests with the employer to prove by a preponderance of the evidence that it would have made the same decision even absent consideration of the illegitimate factor." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 n. 6 (Mo. banc 2007) (internal citations omitted).

souri Approved Jury Instructions." In so ruling, the trial court may well have been concerned that giving a non-MAI instruction permitting a jury to infer discriminatory intent upon proof of pretext would amount to a reversion to the *McDonnell Douglas* burden shifting analysis expressly rejected by *Daugherty*. Given that possibility, we cannot conclude that the trial court abused its discretion in refusing Appellants non-MAI pretext instructions particularly when, as here, the applicable MAI, MAI 31.24, accurately states the law. *McBryde*, 207 S.W.3d at 168.

Of course, nothing prevented Appellants from offering evidence to suggest that Commerce Bank's explanation for their termination was pretextual, or from arguing to the jury that it could draw the reasonable inference from the pretextual explanation that race and age were "contributory factors" in Appellants' termination. *See Claus v. Intrigue Hotels*, 328 S.W.3d 777 (Mo.App. W.D.2010) (jury may reject purported reason for termination in light of evidence that age was a contributing factor in termination). In fact, the record reflects that Appellants took advantage of these opportunities. Moreover, Appellants have not identified the evidence of pretext they claim was presented at trial. Appellants only generally assert that "[Appellants] presented an abundance of evidence casting considerable and compelling doubt on the reason given by [Commerce Bank] for [Appellants'] terminations," leaving us to speculate about the nature of the vaguely described "evidence." Thus, even if we were to afford credence to Appellants' contention that the proposed "pretext" instructions should have been given in this case, Appellants have not sustained their burden to demon-

strate that the failure to give the proposed pretext instructions resulted in prejudice that materially affected the trial. *Kline*, 334 S.W.3d at 646.

The trial court did not abuse its discretion in refusing to submit Appellants' non-MAI pretext instructions. Point Two is denied.

### Conclusion

We affirm the trial court's judgment.[7]

All concur.

---

7. We acknowledge receipt of Appellants' motion for an award of attorneys' fees and costs in the event we reverse the trial court's judg-

ment. Said motion is rendered moot by this opinion.